IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 7, 2016

**JOHN GRAY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**Nos. 12-02651, 12-03323, 13-00011      James M. Lammey, Judge**
_____

**No. W2015-01921-CCA-R3-PC – Filed September 16, 2016**
_____

The petitioner entered pleas of nolo contendere to aggravated robbery, robbery, and fraudulent use of a credit card for which he received an effective sentence of twelve years. He filed the instant post-conviction petition, and following an evidentiary hearing, the post-conviction court denied relief. On appeal, the petitioner contends his guilty plea was not knowingly, intelligently, and voluntarily entered due to ineffective assistance of counsel. Upon review of the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal As of Right; Judgment of the Criminal Court Affirmed.**

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN, and ROBERT W. WEDEMEYER, JJ., joined.

Carolyn R. Sutherland, Memphis, Tennessee, for the appellant, John Gray.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; Glen Baity, Assistant District Attorney General, and Jessica Banti, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. *Facts from the Guilty Plea Hearing*

On August 1, 2013, the petitioner pled nolo contendere to aggravated robbery, robbery, and fraudulent use of a credit card. The facts underlying the pleas, as explained by the State, were as follows:

Had the [aggravated robbery] gone to trial, the proof would have shown that on December 28, 2011, Barry Baker was in the parking lot of McDonald's at Elvis Presley and Raines. He was attempting to buy a gun from the defendant when Mr. Gray turned the gun on him and demanded his money. He gave Mr. Gray eighty dollars in Memphis/Shelby County.

. . .

Had [the robbery] gone to trial, the proof would have shown that on February 20, 2012, again the same victim, Mr. Baker, was inside a barber shop when Mr. Gray walked in. Mr. Gray and Mr. Baker got into a verbal altercation, at which time Mr. Gray forcibly took the victim's phone.

. . .

Had [the fraudulent use of a credit card] gone to trial, the proof would have shown that on November 28, 2011, Mr. Gray attempted to purchase items at Sears. He used a credit card that belonged to his grandmother without her permission.

During the plea colloquy, the petitioner informed the trial court that he had entered guilty pleas before and understood his rights. The petitioner affirmed that trial counsel reviewed the plea petition and his rights with him. He also acknowledged he had the rights to a trial by jury, to confront witnesses against him, and to compel his own witnesses. Finally, the petitioner affirmed he was entering his plea freely and voluntarily. The trial court accepted the agreed upon plea agreement and found the petitioner guilty of aggravated robbery, robbery, and fraudulent use of a credit card, sentencing the petitioner to the agreed upon effective sentence of twelve years.

## II. *Facts from the Post-Conviction Hearing*

On September 10, 2015, the trial court conducted the post-conviction proceeding. The petitioner testified that trial counsel failed to file a motion to suppress evidence based upon the fact that he was held in jail without a finding of probable cause for forty-eight hours prior to his arrest. He also testified that trial counsel did not take time to investigate his case properly. Specifically, the petitioner claimed that trial counsel failed to obtain a copy of the security tape from McDonald's, the scene of the aggravated robbery. The petitioner acknowledged that he had seen discovery related to the aggravated robbery charge, but claimed he was never provided a copy. He further stated that he was not provided a copy of the discovery relating to the robbery charge. The petitioner also testified that trial counsel failed to interview his grandmother, the victim in the fraudulent use of a credit card matter. The petitioner stated that he only met with trial counsel three times. Finally, the petitioner explained that he pled guilty because "it was my best option out at the time."

On cross-examination, the petitioner admitted counsel advised him that McDonald's did not have the security tape from the day of the incident. The petitioner also admitted he was aware of his right to a trial and his right to present witnesses, and the trial court informed him of such during his plea hearing. He further acknowledged he understood his right to subpoena witnesses. However, despite knowing he had a right to a trial and to present witnesses, the petitioner testified that he pled guilty "because it was in my best interest."

The petitioner also testified that he provided counsel with the names of two potential witnesses from the aggravated robbery case, Tomika Herron and Jonny Washington. He testified that counsel did not speak with Tomika Herron regarding the robbery charge. However, the petitioner admitted Tomika Herron was a witness to the aggravated robbery and had given a statement in connection with that incident. The petitioner also admitted that his grandmother, Bessie Graves, provided a statement to police regarding the fraudulent use of a credit card charge. The petitioner claimed he wanted to go to trial on the aggravated robbery charge but chose not to due to the ineffective assistance of trial counsel. The petitioner admitted, however, that he never brought his displeasure with trial counsel to the attention of the trial court prior to or during the guilty plea hearing. The petitioner admitted to being advised of his rights by the trial court, that he understood those rights, and that he chose to forgo those rights and enter a guilty plea in order to get the lowest possible sentence.

Counsel was appointed to the petitioner's case six months after the incident and represented the petitioner prior to and during the guilty plea hearing. Counsel testified that he filed standard motions in the petitioner's case including a motion for discovery, "a motion for extension of time, and a motion for witness statement." Counsel also testified that he received discovery in all three cases and reviewed it in full with the petitioner. Counsel stated that he met with the petitioner several times and discussed each case and all evidence with the petitioner.

According to counsel, the petitioner wanted to plead guilty to the fraudulent use of a credit card charge and go to trial on the other two charges. However, the prosecution was only offering a package deal. He could either plead guilty to all three offenses or go to trial on all three offenses, but he could not pick and choose between offenses. Counsel testified that the petitioner admitted to him that he was guilty of the fraudulent use of a credit card charge, and the State had photographs of the petitioner using the card at the Sears store.

Counsel testified that he personally investigated the aggravated robbery. He went to the McDonald's, viewed the crime scene, and spoke to the manager regarding

surveillance footage for the time of the offense. However, counsel was informed that the surveillance footage was unavailable for the time of the incident. Counsel passed this information to the petitioner. Counsel testified that he also requested the surveillance footage from the State; however, the State did not have a copy either. Counsel stated that the petitioner never mentioned the issue regarding the forty-eight hour hold. He also testified that the petitioner never complained to him about witnesses not being contacted or found.

Counsel testified that he explained the rights available to the petitioner, including his right to proceed to trial. He also explained the nature and consequences of an *Alford* plea to the petitioner. Finally, counsel stated that he did not force the petitioner to enter the plea agreement or attempt to persuade the petitioner not to go to trial. The post-conviction court denied the petition after considering the testimony and evidence presented. This appeal followed.

III. *Analysis*

A. Standard of Review

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (*quoting Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the post-conviction court are conclusive on appeal unless the evidence preponderates against them. *See Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). The appellate court will not reweigh the evidence and will defer to the post-conviction court's findings when reviewing factual issues such as the credibility of witnesses or the weight of their testimony. *Id.* However, the appellate court will review a post-conviction court's application of law to the facts of the case de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

### B. Ineffective Assistance Of Counsel

Both the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution mandate that criminal defendants receive effective assistance of counsel. *Dwayne Williams v. State*, No. W2014-02415-CCA-R3-PC, 2016 WL 409780, at *6 (Tenn. Crim. App. Feb. 3, 2016) (*citing Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004)). To establish a claim of ineffective assistance of counsel, the petitioner has the burden of showing both that trial counsel's performance was deficient, and the deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee)).

The *Strickland* standard is a two-prong test. First, the defendant must show trial counsel's performance was deficient. *Strickland*, 466 U.S. at 687. This requires showing counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Id.* Second, the defendant must show the deficient performance prejudiced his defense. *Id.* This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.* In the context of guilty pleas, the defendant must show "a reasonable probability that, but for the errors of his counsel, he would not have entered the plea." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *accord Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994).

The petitioner argues that counsel was ineffective for failing to provide him with discovery in the robbery case. However, trial counsel confirmed that he reviewed the discovery in all three cases with the petitioner. Trial counsel also testified that during his review of the discovery from the robbery charge, the petitioner admitted he had an altercation with the victim at the barbershop.

The petitioner also alleges that trial counsel was ineffective for not hiring an investigator and for not obtaining a copy of the surveillance footage from the crime scene. Trial counsel testified that he investigated the case himself. He felt there was no need to hire an outside investigator for what he determined to be a straightforward case. Trial counsel further testified that he requested a copy of the surveillance footage from the manager of McDonald's as well as from the State. Due to McDonald's retention policy, the footage was no longer available when trial counsel was appointed to the petitioner's case, more than six months after the incident. The petitioner has presented no evidence that the video footage was ever available. The State also confirmed there was no video evidence available from the crime scene.

- 5 -

The petitioner further alleges that trial counsel was ineffective for failing to file a motion to suppress evidence obtained while the petitioner was being held prior to a probable cause determination. However, the petitioner failed to identify what evidence, if any, should have been suppressed or would have acted as a legitimate basis for a motion to suppress. The post-conviction court noted the only evidence that resulted from the petitioner's detention was a self-serving, non-incriminating statement given by the petitioner. No other evidence was obtained as a result of the detention. The court stated:

> Now, if he'd given a full confession after seventy-two hours and it was an illegal arrest and he gave a full confession and they were going to use that against him at trial and his lawyer didn't file a motion to suppress based on that, well, there was nothing to suppress . . . So, I don't see where there was an issue about the forty-eight hour hold at all. I think it would have been a needless waste of time for [trial counsel] or any other lawyer to file some sort of motion dealing with a forty-eight hour hold.

Trial counsel filed motions he felt were appropriate in the action based upon his more than thirty years of experience in criminal defense. The petitioner failed to establish that counsel was deficient in his performance by not filing a motion to suppress.

We also note that the post-conviction court accredited the testimony of trial counsel over that of the petitioner and found the petitioner to not be a credible witness. Questions concerning the credibility of witnesses and the weight given their testimony are for resolution by the post-conviction court and not this Court. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009). The petitioner has failed to show trial counsel was deficient in his investigation or preparation of the petitioner's cases, or that the petitioner would have insisted on proceeding to trial but for the ineffective assistance of trial counsel. Thus, he is not entitled to relief.

### C. The *Alford* Plea

It is well settled in Tennessee that a guilty plea must be knowingly, voluntarily, and intelligently entered in order to be valid. *State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977); *see also Lane v. State*, 316 S.W.3d 555 (Tenn. 2010); *North Carolina v. Alford*, 400 U.S. 238 (1970); *Boykin v. Alabama*, 395 U.S. 238 (1969)). A guilty plea is void as a violation of the defendant's due process rights if it is not knowingly, voluntarily, and intelligently entered. *Lane*, 316 S.W.3d at 562. The court must determine whether the guilty plea evidences a voluntary and informed decision to pursue a guilty plea in light of the alternative options available to the defendant. *Id.* Courts will consider the following in determining whether a guilty plea is valid: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the

competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty at trial. *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006).

A plea that is the product of coercion, misunderstanding, inducements, threats, or ignorance is not voluntary. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial judge is required to ensure the defendant fully understands the nature and consequences of the guilty plea. *Id.* at 904. The court is required, at a minimum, to explain to the defendant that he has a right to a trial by jury, a right to confront witnesses against him, and a right against self-incrimination. *State v. Miller*, 634 S.W.2d 615, 618 (Tenn. Crim. App. 1981).

Our review of the guilty plea hearing and voir dire examination of the petitioner reveals that the trial court properly and thoroughly explained the nature and consequences of the petitioner's guilty plea. The trial court explained the charges against the petitioner, the nature of an *Alford* plea, and the consequences that such a plea could have on the petitioner in future criminal proceedings. The trial court confirmed the petitioner signed a waiver of trial by jury after reviewing it with his attorney, and he understood he had a right to a trial by jury. As a part of the right to trial by jury, the trial court explained to the petitioner that he had a right to confront witnesses against him, as well as compel his own witnesses to testify in court. The trial court further explained to the petitioner his right against self-incrimination. Finally, the trial court clarified that the petitioner wished to waive those rights and enter a guilty plea. Throughout the hearing, the petitioner repeatedly affirmed that he understood his rights and wished to proceed with the guilty plea. The record is clear that the submission of the guilty plea was performed thoroughly and properly by the trial court.

Next, turning to the factors for determining the validity of the petitioner's guilty plea, we note that the petitioner admitted, during both the guilty plea hearing as well as the post-conviction proceeding, that he had previously pled guilty to multiple felonies. The petitioner prepared and attempted to file several motions on his own behalf. The post-conviction court accredited trial counsel's testimony that he had met with the petitioner on multiple occasions, explained the charges and evidence against him, and investigated the case competently and thoroughly. Trial counsel testified that he explained to the petitioner his right to a trial, as well as the nature and consequences of an *Alford* plea. The post-conviction court noted that trial counsel procured a "great deal" for the petitioner, stating that had the petitioner proceeded to trial he would have been exposed to a much harsher sentence. The petitioner was, in fact, able to avoid a much higher punishment due to the efforts of his trial counsel. Finally, the petitioner admitted

during the post-conviction proceeding that he was pleading guilty because it was "in his best interest" and in order to get the least amount of time possible.

Regarding the petitioner's argument that he only pled guilty because of the ineffective assistance of trial counsel, the petitioner acknowledged he never brought this to the attention of the trial court prior to or during the guilty plea hearing. The petitioner admitted he understood he could have raised this concern with the trial court and did not. Furthermore, the post-conviction court determined, after hearing the testimony and reviewing the evidence that trial counsel had performed competently in representing the petitioner.

The post-conviction court held that the petitioner was not credible and that he knowingly, intelligently, and voluntarily entered his guilty plea. Once a guilty plea is knowingly, voluntarily, and intelligently entered it is not void simply because the petitioner is no longer happy with his decision. *Robert L. Freeman v. State*, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at \*2 (Tenn. Crim. App. May 10, 2002). After reviewing the record and the determinations by the post-conviction court as to the credibility of the petitioner and trial counsel, the petitioner has failed to show that his guilty plea was not knowingly, voluntarily, and intelligently entered due to the ineffective assistance of trial counsel. Therefore, he is not entitled to relief on those grounds.

## CONCLUSION

Based upon the briefs of parties, the record, and the applicable law, we affirm the judgment of the post-conviction court.

_____
J. ROSS DYER, JUDGE